Okay. Securities and Exchange Commission v. Keener. Mr. Richmond. Chief Judge Pryor, may it please the court. Under SEC v. Al Mugarby, Justin Keener is not a dealer. In Al Mugarby, this court recognized what it characterized as a was not an investor. As the court said, unlike an investor, Al Mugarby did no research, had no long-term views on the value of securities, and took no investment risk. Instead, Al Mugarby made a risk-free profit by acquiring pre-existing debt, which instantaneously swapped for stock at a discount and sold. He made his money risk-free by executing transactions. That is not this case, Your Honors. Mr. Keener is an investor. He lent money for months at a significant risk. In 2015, for example... You assume that investor and dealer are exclusive categories? Yes, Your Honor. Looking to Al Mugarby, I think... You can't be a dealer and be an investor? I think from Al Mugarby, Your Honor, an investor is not a dealer. Looking at what he... I'm not sure that necessarily follows. You can be a whole lot of things at the same time. I'm not saying your argument is one category excludes the other. So if Mr. Al Mugarby had done a little bit of research in a day and then sold the stocks a day later, why would that change things for him? And why would it change things for Mr. Keener? Your Honor, I would look to how the person is making their profit. Are they making it by taking informed investment risk, or are they making it by risklessly conducting transactions? So in this case, Mr. Keener conducted diligence prior to every loan investment. I see someone with a business model that looks a lot like Al Mugarby's. And he maintains a public website. He develops proprietary software and issues press releases to solicit borrowers. He sponsors and attends lavish industry conferences for micro-cap issuers. This guy's more of a dealer than Al Mugarby seems to me. Respectfully, Your Honor, I disagree. Keener is acting as an investor. He is investing that money to look for investment opportunities. And I think the risk here is important. Again, Al Mugarby made money by executing trades. Keener made money by finding good loans. In 2015, he lent four million dollars. He wrote off 2.4 million as lost because these are risky. Risk Al Mugarby never incurred. But those things, Mr. Richman, they're just nowhere in the statutory text. The dealer is defined in the 34 Securities Act as any person engaged in the business of buying and selling securities, ellipsis, for such person's own account through a broker or otherwise. And then there's an exclusion that doesn't apply here. That investment thing isn't in the statutory text. And it's not in our cases either. I respectfully disagree about it not being the case, Your Honor. Looking to Al Mugarby on pages 10 and 12 of the opinion, the court construing that specific text recognizes that it, that text recognizes distinction between dealing and investing. And in the court on page 12 says, unlike an investor, Al Mugarby did no research, had no risk, and took no long-term views. Instead, the court continues, he made money solely by executing transactions. What Keener did here is typical of investing. He looked into the financials of every company he invested in, and his ability to earn a profit or not earn a profit flowed entirely from his skill in picking good investments from bad investments, and his understanding that some investments would fail and some would succeed, and the hope that the ones that succeeded made more money than the ones that failed. And I would point out, Your Honor, in Al Mugarby, the court noted that Al Mugarby made none of his money by the appreciation in stock. I would just say here, Keener made the majority of his money by the appreciation in stock. Yes, Mr. Keener did receive stock in some loans. I would point out that one in five loans repaid in cash, which is classic investing and lending activity. But when Mr. Keener did receive stock, he made an independent investment decision as to when or if to sell it, based on his long-term view of the value of the stock. So in this case, Mr. Keener made most, a majority of his profits, by holding stock for more than a year and waiting for it to appreciate in value before he would sell it. And, Your Honor, I would suggest that that is investing. It's classic investing. And I would like to... What's the dividing line, then? I mean, if you're, if you, if you consider yourself a boy or girl genius and your investment savvy lets you think up investment risks and downsides and upsides in a nanosecond, so that you can make decisions on the fly, but you've considered your investment options and you've made decisions that you think are going to be financially beneficial for you, are you an investor or a dealer? I think it might depend on the case, Your Honor, but here, I think it's differentiated from Al McGarvey. It takes a day. The person involved gets convertible debt for a loan, and a day after getting the convertible debt decides, eh, I'm selling or I'm converting. I'm doing it right now because I'm better than the market. I know the market. Is he an investor or is he a dealer? I have two answers to that, Your Honor. So first, I would just like to point out that the acquiring newly issued stock and selling it into the market is extremely common. Every pipe, private investment in public equity, every equity line in the United States, multi billions of dollars every year, every single one of them acquires the acquisition of new stock at a discount, and it's prompt resale, and none of those people are registered as broker-dealers. I would also point out that convertible lending, exactly what we're talking about here, is a multi-billion-dollar-a-year industry. It is authorized by a specific SEC rule, Rule 144 D3 III, in which no lender has ever thought it needed to register as a dealer. My friend could not point to one example in this multi-billion-dollar industry over the last 20 years. So would you agree with me that the customer argument you spent so much time on your brief is foreclosed by Al McGarvey? No, Your Honor. I think that Al McGarvey was focused talking specifically in the specific facts. We said a customer requirement has no grounding in the statutory text. I think the holding of Al McGarvey on page 17 was limited to the specific facts of that case, but, Your Honor, I don't think Your Honor needs to get to that because I think Al McGarvey on its face resolves this case because Mr. Keener was acting as an investor. Unlike Al McGarvey, your client's activity is directly implicated by the public guidance that the Commission issues on the definition of a broker-dealer. He holds himself out as being in the business of continuously buying and selling securities. Isn't that right? So I disagree with that, but I agree with the first point. How do you disagree with that? I mean, the record clearly shows that to be true. Mr. Keener never held himself out as willing to sell to anybody. Mr. Keener, all of his sales is undisputed were through registered broker-dealers. He held himself out as being in the business of continuously buying and selling securities. I didn't say to anyone. Your Honor, to look at the SEC guidance, and I think my friend has no response to this, they say in page 51 of their brief that the Occoquan Wellington no-action letter would put the market, quote, on notice of the relevant law. I completely agree. He cites pages 3 and 4. I would turn to page 5, footnote 10. That says explicitly that convertible lenders operate, quote, without being broker-dealers. That is the exact no-action letter that the Commission asks parties to review. If the court were to go on the Commission's website to this day, under the heading, What to Do If You Think You're a Dealer, it says to go review Commission guidance. If the court were then to go to guidance on the Commission's webpage under broker-dealer registration-dealers, there is one guidance document, Occoquan Wellington, and that guidance document states on its face that convertible lending, funds that frequently buy convertible debt securities and promptly resell at a discount, are not broker- dealer. Mr. Keener relied on explicit guidance from the Commission itself that is still on its webpage. And then, Judge Jordan, to address your point about acquiring a convertible note, converting, let's say, in a day and then selling, is that sufficient risk? I would say the Commission has answered this. So when Al McGarvey, when the court talks about buying new stock and selling it, it's talking about what it calls underwriting. And that's what the Commission's brief talks about as well. They say underwriting 20 times in their brief. Underwriting is defined in SEC rules. Rule 144 is a binding definition of the word underwriting. And 144 says that when an investor holds a security, here debt, for six months or more, that investor has incurred sufficient risk that any subsequent resale, including of a converted security, will not be deemed a distribution and the investor will therefore not be deemed an underwriter. And I would say the Commission itself has explicitly linked that rule to dealing. Volume 50 of the Federal Register, page 28391, the Commissioners themselves said, when ascertaining whether a purported dealer is engaged in underwriting or distribution, the courts and the Commission should look to the 33 Act interpretations of what an underwriter is. And, Your Honors, that my friend's argument that Mr. Keener has no risk and is engaged in underwriting is contrary to the official position of the Commission. And moreover, Your Honor, I would note that my friend's colleagues in the staff in 2021 proposed an amendment to Rule 144 for the explicit purpose of labeling convertible lenders underwriters. They cited an article about Mr. Keener himself, but the Commission rejected that rule proposal. So the Commission here is asking this court to adopt a definition of underwriting that the Commission itself has rejected. Your Honors, I think unless the panel has further questions, I could reserve, I would reserve the balance for rebuttal, but I would just end with that. I have one, I have one more question. How do you, how do you make sense of the clause in the business of buying and selling securities? How does that play into your definition? I would look to page 10 and 12 of this court's opinion in Al Mugarby. When Al Mugarby is reading that phrase, so subparagraph A, subparagraph B of the definition, business of buying and selling securities and whether you're in a regular business of doing it, the court draws a distinction and it calls it a, quote, crucial distinction between investing and dealing. And that's how I think this court should read it and it should notice that a dealer makes a risk-free profit. The dealer doesn't care about the underlying financials of the company. And so how do we, how do we assess that, I guess? Does that just go back to this definition of underwriter that you're asking us to apply or is it, I mean, how do you assess whether an individual engaged in these transactions, whether it's risk-free or risky? I think the and on the Federal Register page I cited the court to, the Commission says when you're figuring out whether a purported dealer is engaged in underwriting, you look to those interpretations. And 144 says this, this is the objective test because they realize that prior tests, kind of subjective tests as to what the person's thinking are not sufficient. So they create an objective test, have you taken enough risk? And I think it's telling Judge Brasher that the Commission a couple years ago proposed an amendment to specifically label convertible lenders underwriters. They cited an article about Mr. Keener himself and the Commissioners rejected that proposal. Okay, you've saved a few minutes, Mr. Richmond. Let's hear from the MECUS. Thank you, Your Honor. May it please the Court. Gabriel Gillette from Jenner & Block on behalf of Industry Amici. Your Honors, in Almagarby, this Court recognized Amici's serious concerns about broadly interpreting the dealer definition. That panel issued a narrow, fact-specific opinion focused on the defendant's business at issue. And that's all we need to do here. That is all you need to do here, Your Honor. Importantly, the Almagarby opinion specifically said it was not suggesting that industry members like investment advisors, funds, and others that have not traditionally been understood as dealers, that the Court was not suggesting they were there. I think at a minimum this Court should do the same thing in this case. And if I may, I think the Court should go further in two respects. I think those those points are important. First, the Court should emphasize that the business of dealing is different from the business of being an investment advisor or an investment fund. Second, the Court should clarify that the type of security, that the details of a transaction, for example... That doesn't sound like as narrow a ruling as you were asking for at the start of your argument. Point taken, Your Honor. I thought you came in asking for a narrow ruling, just like Almagarby, and now you're asking me to write something different. I think, Your Honor, if you are going to affirm the dealer is helpful, I think the broader ruling would be helpful if you're talking about what is not dealing. Okay? And I think that... But if we affirm because Keener is a dealer, whatever we're saying about what is not a dealer is really dicta, isn't it? It could be, Your Honor, but I think it's important when you're talking about the business that Mr. Keener is in, as you're going to focus on specific facts. I think here are some that really matter. Number one is the business based on riskless transactions. And Judge Brasher, you asked about what might constitute a riskless transaction. I think one thing that you could focus on is the floorless nature of a particular security. So a convertible security in and of itself is not riskless. It is not floorless. As my friend said, it is common and it is a major, major industry. Companies, blue-chip stocks like Google and others that you have heard of, use convertible, issue convertible securities all the time. The fact of an investment in a convertible security does not make someone a dealer. And there are mutual funds that are registered under the Investment Company Act that do nothing but invest in convertible securities. What matters is not the characteristic of the security, but rather the business at issue for the person who is transacting in the security. So for an investment advisor, an investment fund that buys a convertible security because, say, it starts out as debt and has some of the good features of debt, but allows the investor to participate in the upside, I think that's a good thing. The SEC's own website talks about convertible securities. It describes features of those securities, including the fact that they can be fixed. Yeah, so just real quick. I mean, you don't have a lot of I mean, the risky investment in convertible security and the risk-free investment in convertible security? I think in this case, Your Honor, it's the nature of the floor. That because of that aspect of the security, someone who transacts in them as the sole source of their business can convert and sell with immune, essentially, agnostic market price. Doesn't matter what the market's value in that security, yeah. Exactly right, Your Honor. When there is a floor on the security, that market price matters. And I do think one point of clarification that's important from the Al McGarvey opinion is that investors don't just profit on price appreciation, but they do care about the price. And so, for example, you could short a security and profit based on its depreciation, but I don't think that changes the analysis. I think it's an important point to emphasize that whatever this court does, it needs to recognize there is a big industry out there. There are lots of activity in convertible securities. There are lots of examples of investors that are not dealers that are getting securities directly from issuers, that are getting securities at a discount to market price as an incentive to invest with the issuer, that are getting securities that convert at a fixed rate or at a floating rate. And none of those facts make someone a dealer. What makes someone a dealer is the business that they're in. Judge Jordan, I tether that to the statute. It says buy and sell securities, but it's focused on the business of buying and selling securities. And that's where the Al McGarvey opinion, I think pages 10 to 12 are helpful. Pages 16 to 17 are even better for my clients, and I think important to reiterate in this opinion. Okay, thank you. Thank you. Mr. Prater. May it please the court. I think one thing that I don't think that I agree with the appellant about is the nature of his business. Just one thing? I think one thing he focused on that I'd really like to clarify. The exception to the dealer rule is the trader exception, as we call it. I know the word trader isn't in there, but it's been known to be that way since its inception. And it's not about what you call yourself. It's about what you do. That's how the definition works. As this court recognized in Al McGarvey, a dealer is someone engaged in the business of buying and selling securities for your own account. You can do it through a broker or otherwise. But what they want to say is that he was an investor because his convertible debt deals worked a little bit different than Mr. Al McGarvey's. Mr. Al McGarvey bought season debt. He was already aged by six months, so he didn't have to wait in order to try to avail himself of the Rule 144 exception from registering your securities transactions under the Securities Act. Now, Mr. Keener did it all himself. He went to the issuers. He solicited them. He wined and dined them in Las Vegas in order to get them to allow him to give them a quote loan, which was then convertible into securities after six months he would convert and at a discount. That is a word that my opponent never mentioned, that all of his securities deals had a conversion rate and it discounted it. So he was buying what the market couldn't buy and he was unloading on the market what he bought at a discount and then he sold at market price. Well, that's a spread. That's what a dealer does. So this idea that somehow Mr. Al McGarvey, as the court pointed out, is even more so or more clearly a dealer than Mr. Al McGarvey, it just is, I don't know where they're coming from. I don't know what case they're talking about. As for the amici, you know, some of what he said I agree with, but in general, what they do not want to recognize and what they want the court to do is to draw lines between what type of person you are, what type of market participant you are, and that's not what the definition is. What it is, it says it's a person engaged in the business of buying and selling securities for your own account. And you can have this line drawing exercise, depending upon the case before you, which this court has done now numerous times. It's done it in Eastside Church. It seems like their position on the amici's position in particular is just, look, if this is really an individualized assessment on everybody's individual business practices, then there's a because they're concerned about liability that they're creating. What do you say about that? Well, I mean, I would, I'd like to know more specifics about the industry because there doesn't seem to be any issues within the industry right now. We have a very robust securities market and it's frankly, I don't know. I think the convertible lending. Oh, the convertible lending. Again, you know, I think he showed his hand a little bit when he said, take out the floralist feature of it. And that's, that's where, that's the feature that is unique to these toxic debt lenders. They basically set the instrument and they go, the reason why they go to penny stocks is because those issuers are often strapped for cash. And so they make a deal with the devil. They, they have a discounted note. So it resets after, say you have one tranche of $10,000. Okay. And then you set it, the discount sets to the market to a number of price shares. And then it resets after you sell them so that you get the same discount for the next $10,000 that you, you convert into. And so that's how you pay off that loan. You convert the debt, you sell the shares, the price goes down because these are new issues of shares in the market. And then you convert another tranche, same issuer, but different price now because it's lower. So you get more shares and you want more shares into the market. That's the thing. That's the floralist nature of it. And then that's not something that a traditional investment company would do. If you are registered, there are limits on the amount of underwriting compensation you make. And so that would limit in many ways. And that is why it's not really a very common thing that happens. Is an investment advisor, you may not be able to answer this question in general terms, but I'll ask it anyways because I want to see what you say. Is an investment advisor, which trades partly for its own account, a dealer? Uh, I mean, again, it's, it's, it depends on the circumstances. It's a facts and circumstances test. So I think your honor is right. It's hard to say without having the case before me. And you'd go back to the statutory text to determine whether they're in the business of buying and selling securities, right? Absolutely. Okay. So, so they could be, and I would say, so let me give you just one hypothetical. I'm not trying to pin you down, but I'm trying to get an idea of where the universe plays out. An investment advisor who it turns out over the course of a 10 year period buys on its own account once a year, when it sees an incredible opportunity, a client says, I'd like to invest in Boeing. And they sort of do the investigation to due diligence. They figure out there might be other alternatives to Boeing, this and that, and they buy for the client. But once a year, they're like, wow, we've hit onto something and they buy for their own account. And then they trade next year, different client, but once a year trade on their own account, sell, but does that get any closer to answering the question? Absolutely. I think, I don't think I'm going out ahead of my skis to say that the law has been, has recognized that the regularity of the business is significant. That's what's in the trader exception. And so there are cases, the courts have said it, the commission has said it, where it says isolated transaction, you know, then that would not, you know, count because it's not regular. And so regular, you know, does some work in there in the trader exception. But once a year for 10 years, maybe regular? I mean, it's getting closer to regular, but one, you know, isolated one-off transaction. Also, it maybe depends on how many transactions you otherwise conduct in a year. Yeah, exactly. I think that's exactly right. And I know that there are investment advisors that are duly registered, you know, or they're affiliated with broker dealers. So they, you know, which takes care of this obligation. So yeah, I mean, the closer you get to the regularity of the conduct, you know, the closer you get to the definition applying. But again, it's not a categorical test. It's not about who you say you are or what you, or it's about what you do. And if your activity meets the definition, and I would note the courts and the commission has over the years developed, you know, certain areas that it would tell you that are, you know, quintessential dealer activities. And investing in that way and holding, going long on a security doesn't really fall into that category. Underwriting does, because you're bringing a new issue of shares to market. You know, market making does, but your investment advisor isn't doing any of those things. Mr. Aquino relies in part on some of the guidance he believes the SEC has provided with regards to I mean, again, I don't see, I see a difference between what Mr. Keener is talking about in terms of a traditional convertible note and one that has this feature that makes it floorless. And again, they're not illegal. We don't, we don't regulate the method of, or the structure of your investment instrument. But what it can do is if you're buying it and selling it in this way, you know, you're lending the money out and getting the securities back at a discount and then unloading them, you're engaged in underwriting activity. And so that's a way of knowing that you're buying and selling securities is part of a regular business that we would recognize as being a dealer. So again, it's the activity that, I'm sorry, I thought you had a follow-up there. So I, unless the court has any further questions, we would rest on our brief. Okay. Thank you. Mr. Richman, you've saved three minutes. Thank you, Your Honor. I'd like to start where my friend left off, where he characterized Mr. Keener's activity as underwriting. I think he said that a few times in his brief. I would just point out it's undisputed that Mr. Keener complied with a binding SEC rule that says that his conduct was, quote, not underwriting. And I would say that the Commission itself and the Federal Register has said, when determining whether you're a dealer, as in you're engaged in underwriting type activity, to look to that interpretation. So Mr. Keener is following the Commission's binding interpretation. And what my friend is asking this court to do is to adopt the definition of underwriting that the Commission rejected. In 2021, as I mentioned at the outset, the staff proposed a rule to do exactly what he's saying, to make convertible lenders underwriters. And the like to talk about the dealer regulations that he mentioned. He suggested that there might be some broker-dealer regulations that would apply to Mr. Keener's activity. That is false. I noticed he didn't name it. He was referring to FINRA Rule 5110 when he was referencing activity that might limit underwriting activity. I would refer the court to Rule 5110J18 that specifically defines a public offering as not including transactions that are exempt under Section 401 of the Securities Act. Translated, that means transactions that are exempt under Rule 144. So I would also note that that particular Rule 5110 was cited in Al McGarvey. So Al McGarvey, the court concluded, would not be able to do his activity based on rules that apply to broker-dealers. Those rules do not apply to Mr. Keener. So the Commission is asking this court to identify as a dealer, what they call in their brief, classic dealer activity, in which there is not a single rule, regulation, or statute that would have altered Mr. Keener's conduct in any way, shape, or form. It would not have required him to change anything he did or to disclose any transaction in any other way. I would point out that Mr. Keener's transactions are already fully regulated. They are all disclosed to the Commission by the issuer, and the Commission, in fact, has reviewed numerous of Mr. Keener's transactions. If your honor, just take the first one on the Commission's list. The Commission reviewed it, publicly corresponded with the issuer about that particular transaction, and never commented on it being dealer activity. As for the quote-unquote toxic nature of the loans, I would just point out that acquiring stock at a discount, even a market-changing discount, is extremely common. That language appears nowhere in the Exchange Act. It doesn't refer to anything about that. And I would say that the Commission itself, not this Commission, but prior commissions, has gone out of its way to encourage this particular type of trading, convertible lending. The current Commission disagrees, and that's why they tried to change the rule. But in 2007 and the years since, the Commission has decreased the restrictions on this activity because they realize that it is a valuable source of financing for small public companies. And I would just end, your honors, with this particular type of lending, whether he wants to call it toxic or not, is a multi-billion dollar a year industry. No one is registered as a broker-dealer, and they cannot explain that established market practice. I would point the court to this Court's docket 56-3, where we include SEC v. Yorkville. This is a $1 billion convertible lender where the Commission spent years litigating whether that particular lender had committed fraud by misvaluing the loans on its books. The Commission never once commented that their lending activity, 12,000 percent of Mr. Keener's proceeds, was supposedly unregistered dealing. Okay, clock's got you, Mr. Richman. We appreciate it, and we have your case. Thank you, your honor. Thank you, your honor.